[No. A054890. First Dist., Div. Four. Dec. 21, 1992.]

MICHAEL R. STIMSON, Plaintiff and Appellant, v.
THOMAS CARLSON, Defendant and Respondent.

1202

**COUNSEL**

Martinez & Hampton, George C. Martinez and Gregory J. Hampton for Plaintiff and Appellant.

Ropers, Majeski, Kohn, Bentley, Wagner & Kane, Lawrence M. Guslani, Robert P. Andris, Coddington, Hicks & Danforth and David King for Defendant and Respondent.

**OPINION**

**REARDON, J.**—Appellant Michael R. Stimson appeals after summary judgment was granted in favor of respondent Thomas Carlson in Stimson's action for negligence arising from injuries sustained in a sailboat accident. Stimson contends that (1) the doctrine of assumption of the risk does not bar his cause of action, and (2) even if the defense might bar recovery, a triable issue of fact exists precluding summary judgment. In June 1992, we affirmed the judgment in an unpublished opinion. Thereafter, our Supreme Court issued its decision in *Knight* v. *Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696], and we have been directed to vacate and reconsider in light of that decision. Having reconsidered our earlier opinion in light of subsequent case law, we again affirm the judgment.

## I. FACTS

Respondent Thomas Carlson owned a 35-foot J-class sailboat, the "Cosmic Muffin." On July 26, 1987, Carlson and his six-person crew, including appellant Michael R. Stimson, were sailing on San Francisco Bay. Stimson was an experienced sailor. He had sailed with Carlson at least 15 times and had been a member of Carlson's crew in 9 or 10 sailing competitions. He knew that there are many dangers inherent in sailing. When the boat executed a turn, Stimson knew that the most serious danger to the crew was getting hit by the boom.

Captain and crew must work together to execute a sailing course change. A downwind turn is called a jibe. As the skipper pushes the tiller in one direction, the force of the wind and the boat's change of direction causes the mainsail to swing, sometimes violently, in the opposite direction. As the mainsail swings around, the sail pulls with it a horizontally mounted pole known as the boom. The boom is connected to the mainsail by lines known as mainsheets.

To minimize the danger of being struck by the boom, Carlson customarily called out course changes to his crew. For example, before jibing, he would call out "prepare to jibe," receive acknowledgement from the crew, and then call "jibe ho." Warnings allowed the crew to avoid the swinging boom, reducing the chance of serious injury. Nevertheless, even with safety precautions, "uncontrolled" jibes can occur as a result of sudden wind gusts, swells

or crew error. In high winds, even controlled or intentional jibes can be dangerous.

On the day of the accident, Carlson was manning the tiller while Stimson watched the remaining crew attend to the jib sail. Carlson decided to change course and intentionally executed a jibe. Without Carlson's verbal warnings, Stimson did not realize the course change until just before the collision. Stimson ducked in time to avoid the boom, but was unable to avoid the mainsheets attached to it. He sustained multiple fractures of his right arm and wrist.

In 1988, Stimson filed a negligence action against Carlson, who asserted the doctrine of assumption of the risk as an affirmative defense. Carlson moved for summary judgment based on this defense. The trial court initially denied the motion, finding that Stimson did not assume the risk of an unwarned course change. The court's decision also stated that there were triable issues of fact about whether a warning was given and whether Stimson had assumed the risk of not hearing a course change warning.

On June 3, 1991, Carlson filed a motion for reconsideration citing *Donohue v. San Francisco Housing Authority* *(Cal.App.), a case decided after the trial court's tentative decision had been issued. After rebriefing by both parties, the court granted reconsideration and summary judgment for Carlson.[1] Judgment was entered accordingly.

## II.  STANDARD OF REVIEW

Summary judgment is proper only if there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code

---

[1]Stimson contends that the order granting summary judgment does not "specifically refer to the evidence proffered in support of, and if applicable in opposition to, the motion which indicates that no triable issue exists." (Code Civ. Proc., § 437c, subd. (g).) The order states the reason for the grant of summary judgment—the doctrine of assumption of the risk—and specifies that once applied, no disputed *material* fact remains. The record allows us to infer that any possible disputed material facts became immaterial after *Donohue* narrowed the focus of the factual inquiry. While the trial court's order could have been more detailed, it is sufficient to provide this court with the trial judge's reasoning. In any event, we review the trial court's ruling, not its reasoning. (*McCorkle* v. *State Farm Ins. Co.* (1990) 221 Cal.App.3d 610, 615 fn. 2 [270 Cal.Rptr. 492].) This is especially so in a case such as this, when an intervening Supreme Court ruling clarifying significant legal principles may alter the legal reasoning, but not the ruling.

Stimson also disputes the truth of several of witness Larry Klein's statements as a sailing expert. Any possible dispute about the truth of his testimony is irrelevant. Klein did not focus on the causes of *this accident*, but possible accidents that may occur on sailboats. These were not disputed *material* facts.

*Reporter's Note: Review granted August 14, 1991 (S021823), transferred to Court of Appeal November, 30, 1992, with directions to vacate decision and reconsider in light of *Knight* v. *Jewett, supra*, 3 Cal.4th 296. See 16 Cal.App.4th 658 for subsequent opinion.

Civ. Proc., § 437c, subd. (c).)· ■ On review, we strictly construe the moving party's papers and liberally construe those of the opposing party to determine if they raise a triable issue of material fact. (*Howell* v. *State Farm Fire & Casualty Co.* (1990) 218 Cal.App.3d 1446, 1448 [267 Cal.Rptr. 708].)

## III. ASSUMPTION OF RISK

Stimson first contends that the doctrine of reasonable implied assumption of the risk is fully subsumed within the principles of comparative fault. After he made this argument, the Supreme Court ruled that the distinction between reasonable and unreasonable implied assumption of the risk is "more misleading than helpful." (*Knight* v. *Jewett, supra,* 3 Cal.4th at p. 309, fn. omitted.) Instead, the court held that the critical distinction was between primary and secondary assumption of the risk cases. (*Id.,* at pp. 308-309.) ■ In cases of primary assumption of the risk, the defendant owes no duty to protect the plaintiff from a particular risk of harm regardless of whether the plaintiff's conduct in undertaking the activity was reasonable or unreasonable. (*Id.,* at pp. 309-310.) In such cases, the doctrine continues to operate as a complete bar to recovery. (See *id.,* at pp. 314-315.) The principles of comparative fault extend only to secondary assumption of the risk cases—those instances in which the defendant does owe a duty of care to the plaintiff but the plaintiff knowingly encounters a risk of injury caused by the defendant's breach of that duty. (*Id.,* at p. 308.)

■ Next, Stimson argues that Carlson did not prove the elements of primary assumption of the risk sufficient to permit the trial court to grant summary judgment. He contends that a material triable issue of fact still exists—whether or not it was within his ordinary expectation that Carlson would turn the boat without warning. After *Knight,* however, it is clear that Stimson's case does not turn on his "subjective knowledge or appreciation of the potential risk" but on "whether, in light of the nature of the sporting activity in which [both] were engaged, [Carlson's] conduct breached a legal duty of care to [Stimson]." (See *Knight* v. *Jewett, supra,* 3 Cal.4th at pp. 315-316.)

Generally, defendants have no duty to protect plaintiffs against risks inherent in an active sport. (*Knight* v. *Jewett, supra,* 3 Cal.4th at pp. 315, 320 fn. 7.) A swinging boom is a risk inherent in the sport of sailing. Thus, Carlson owed no legal duty to eliminate or protect Stimson against this inherent risk. When an inherent sports risk is involved, the defendant is liable only if he or she intentionally injures another player or engages in conduct that is so reckless that it is totally outside the range of the ordinary activity involved in an active sport. (*Id.,* at pp. 318, 320.)

Failing to call out course changes does not amount to intentional or reckless conduct. Stimson alleged that Carlson was negligent, not that he committed an intentional tort. Carlson's failure to declare a course change before executing it was not so reckless as to be totally outside the range of ordinary activity involved in the sport. (See *Knight* v. *Jewett, supra,* 3 Cal.4th at pp. 320-321.) While his conduct was unexpected, it did not alter the fundamental risk of sailing—the boom and its sheets remained the danger. Therefore, Carlson's conduct did not breach any legal duty to Stimson, the case falls within the primary assumption of the risk doctrine barring Stimson's action, and the trial court properly granted Carlson's motion for summary judgment. (See *id.,* at p. 321.)

## IV. CONCLUSION

Particularly in the area of athletics and recreation, the doctrine of primary assumption of the risk prevents lawsuits among participants who are knowingly engaged in the normal activities, and inherent risks, of an active sport. By eliminating liability for unintended accidents, the doctrine ensures that the fervor of athletic competition will not be chilled by the constant threat of litigation from every misstep, sharp turn and sudden stop. (See *Ross* v. *Clouser* (Mo. 1982) 637 S.W.2d 11, 14.) On a larger scale, participation in amateur athletics is a socially desirable activity that improves the mental and physical well-being of its participants. The freedom to enjoy such activity is preserved through application of the doctrine of primary assumption of the risk.

The judgment is affirmed.

Anderson, P. J., and Perley, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 18, 1992.