[No. G016655. Fourth Dist., Div. Three. Sept. 30, 1997.]

JOSEPH PATRICK MOSCA, Plaintiff and Appellant, v.
DAVID WILLIAM LICHTENWALTER et al., Defendants and
Respondents.

**552**

## COUNSEL

Graves, Roberson & Bourassa and Stephen D. Roberson for Plaintiff and Appellant.

Cassidy, Warner, Combs, Thurber & Lane, Glen A. Stebens, Littler, Mendelson, Fastiff, Tichy & Mathiason, Russell P. Brown and Margaret C. Bell for Defendants and Respondents.

## OPINION

**WALLIN, Actings P. J.**—Joseph Patrick Mosca appeals the grant of summary judgment against him in his personal injury action, contending the trial court erred by finding he assumed the risk of his injury. We affirm.

Mosca and 23 others boarded a sportfishing boat for a day of ocean fishing off San Clemente Island. Another fisherman, David William Lichtenwalter, was fishing near Mosca off the stern. Lichtenwalter's line became entangled in kelp and he tried to release it to no avail. A deckhand approached Lichtenwalter to assist in freeing his line. About the time Lichtenwalter backed up and handed his pole to the deckhand, the line "slingshotted" back over the rail towards Mosca, who was struck in the eye with the sinker, causing a partial vision loss.

The declaration of Dave Wilhite, a sportfishing expert, was submitted in opposition to the motion for summary judgment. He opined injury from

hooks or sinkers when fishing lines slingshot may occur when an improper technique of freeing a stuck line is used. He indicated the danger of injury when extricating a line caught on an underwater object can be minimized by reaching down near the waterline, wrapping the line around a hand, and pulling it at a low angle. Lichtenwalter apparently used that approach when he first tried to release it. When he stepped back for the deckhand to intervene, he allegedly pulled the line in a higher, upward direction.

■ Mosca contends the trial court erred in granting summary judgment based on assumption of risk. "On review of an order granting or denying summary judgment, we examine the facts presented to the trial court and determine their effect as a matter of law." (*Parsons* v. *Crown Disposal Co.* (1997) 15 Cal.4th 456, 464 [63 Cal.Rptr.2d 291, 936 P.2d 70].)

In *Knight* v. *Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696], the Supreme Court discussed the difference between "primary" and "secondary" assumption of risk. Primary assumption of risk is a policy-driven legal concept where the courts declare there is no duty at all. (*Id.* at p. 315.) "[The] defendant owes no duty to protect the plaintiff from a particular risk of harm . . . ." (*Staten* v. *Superior Court* (1996) 45 Cal.App.4th 1628, 1632 [53 Cal.Rptr.2d 657].)

Primary assumption of risk has often been imposed where the plaintiff and defendant are engaged in a sport. "In the sports setting . . . conditions or conduct that otherwise might be viewed as dangerous often are an integral part of the sport itself." (*Knight* v. *Jewett, supra,* 3 Cal.4th at p. 315.) To decide whether a duty will be imposed on a participant in a sporting activity, the court must determine whether the injury suffered arises from an inherent risk in the activity, and whether imposing a duty " 'might chill vigorous participation in the implicated activity and thereby alter its fundamental nature. [Citation.]' " (*Regents of University of California* v. *Superior Court* (1996) 41 Cal.App.4th 1040, 1046 [48 Cal.Rptr.2d 922].) Determination of what constitutes an "inherent risk" is a legal question for the court. (*Staten* v. *Superior Court, supra,* 45 Cal.App.4th at p. 1633.)

The trial court, at least implicitly, determined the danger of injury from a hook or sinker flying toward a participant is an inherent risk in sportfishing, and imposing the specter of liability regarding the danger would chill or alter the sport. That determination was reasonable. Hooking and catching fish require a great deal of knowledge, physical skill, and attention. A participant who worries whether he is hooked on a fish or kelp, and what method should be used to deal with the line in either instance, will not be an effective fisherman, and may be inclined to give up the sport.

Mosca argues that getting hit in the eye by a sinker is not an inherent danger in sportfishing because there was evidence none of the parties, witnesses or the expert had ever heard of this type of injury. The inquiry is not that narrow. The question involved is a broader inquiry: whether injury from flying hooks and sinkers is inherent in the sport.

Relying on expert witness Wilhite's declaration, Mosca also asserts the danger of being hit by a recoiling line which is stuck on an underwater object is not inherent in the sport if care is used to release it, by properly pulling it or even by cutting the line. He begs the question by making this argument. The question whether the sport can be made safer if certain techniques are used bears on the standard of care, and is a question that is reached only if the threshold question of duty is resolved against the defendant. Wilhite admits flying hooks and sinkers are risks in the sport. He merely indicated the danger can be *minimized* if care is taken and specific techniques to free a line are used.

Courts have recognized these principles in cases dealing with other sports activities. In *Regents of University of California* v. *Superior Court, supra,* 41 Cal.App.4th 1040, the court held rock climbers assume the risk climbing anchors may give way, even though it was a standard procedure to double check the anchors to maximize safety. "Falling, whether because of one's own slip, a coclimber's stumble, or an anchor system giving way, is the very risk inherent in the sport of mountain climbing and cannot be completely eliminated without destroying the sport itself. [Citation.]" (*Id.* at p. 1047.) The court found an inherent risk of harm despite the presence of safety measures. (See also *Dilger* v. *Moyles* (1997) 54 Cal.App.4th 1452, 1455 [63 Cal.Rptr.2d 591] [practice of yelling "fore" to minimize chance of other golfers being hit by errant shots does not justify imposing duty of care].)

Mosca points out that *Knight* v. *Jewett, supra,* 3 Cal.4th 296, and other cases where primary assumption of risk has been found involved contact sports or other sports where the defendant was an opponent. But there is no such limitation on the doctrine. In *Staten* v. *Superior Court, supra,* 45 Cal.App.4th at page 1634, the court applied the doctrine to figure skating, a "teamless" sport where one participates in close proximity with others so engaged. Sportfishing is the same type of close-proximity endeavor.

Cases declining to find primary assumption of the risk are distinguishable. In *Yancey* v. *Superior Court* (1994) 28 Cal.App.4th 558 [33 Cal.Rptr.2d 777], the court held a participant throwing a discus owes a duty of due care to check the field before throwing because "[n]othing about the inherent nature of the sport requires that one participant who has completed a throw

and is retrieving his or her discus should expect the next participant to throw without looking toward the landing area." (*Id.* at p. 566; see also *Lowe* v. *California League of Professional Baseball* (1997) 56 Cal.App.4th 112, 123 [65 Cal.Rptr.2d 105] [antics of team mascot that distracted plaintiff who was struck by foul ball were not integral to the sport].) But Lichtenwalter, in attempting to free his line, was engaged in a typical adjunct of fishing.

In *Morgan* v. *Fuji Country USA, Inc.* (1995) 34 Cal.App.4th 127 [40 Cal.Rptr.2d 249], the court found assumption of the risk was not available to the defendants as grounds for summary judgment because their golf course design could be held by a trier of fact to have affirmatively *increased* the inherent risk of being struck by errant golf balls. Mosca neither claims, nor did he show, the fishing boat design or anything about the boat owners' fishing policy affirmatively increased the risk of harm. At most he alleges a deckhand was guilty of failing to ensure Lichtenwalter engaged in a preferred line retrieval technique.

Mosca notes that assumption of risk cannot be invoked in hunting accidents, but that is "because of the *special danger* to others posed by the sport of hunting." (*Knight* v. *Jewett, supra,* 3 Cal.4th at p. 320, fn. 7, italics added.) Indeed, that concept has been codified by the Legislature. (See Fish & G. Code, § 3049 et seq.) Mosca makes no showing sportfishing has attained a similar status. Although fishing carries with it certain dangers, it does not involve the potentially mortal danger involved in hunting.

The judgment is affirmed.

Sonenshine, J., and Rylaarsdam, J., concurred.

A petition for a rehearing was denied October 15, 1997, and appellant's petition for review by the Supreme Court was denied December 10, 1997.