[No. F035671. Fifth Dist. Oct. 1, 2001.]

HALEY SHANNON, a Minor, etc., et al., Plaintiffs and Appellants, v. PHILLIP RHODES, Defendant and Respondent.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.

## COUNSEL

Law Offices of Douglas L. Hurt and Douglas L. Hurt for Plaintiffs and Appellants.

Oswald & Yap, Michael A. Oswald and Mark D. Holmes for Defendant and Respondent.

## OPINION

**ARDAIZ, P. J.**—In this case we consider the application of *Knight v. Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696] (*Knight*), to the recreational activity of boating. A minor child and her siblings brought a negligence claim against the owner and operator of a ski boat for damages arising out of her fall from the ski boat and the subsequent near amputation of her arm by the boat's propeller. The victim, six-year-old Haley Shannon, and her siblings, Samantha Shannon and John Shields, by and through their mother as guardian ad litem, Connie Shannon, appeal from the trial court's grant of summary judgment in favor of the boat's driver, respondent Phillip Rhodes. Appellants contend the trial court erred in concluding that their claims were barred by the doctrine of primary assumption of risk. In the published portion of this opinion we conclude the doctrine of primary assumption of risk does not apply to bar the negligence claim of a passenger in a boat simply being used to ride around on a lake. In the unpublished portion of this opinion we hold that respondent's motion for summary judgment failed to shift the burden of proof to appellants on the issue of causation. We therefore reverse the grant of summary judgment.

### FACTS AND PROCEDURAL HISTORY

The basic facts are undisputed. On August 27, 1997, Rhodes took the Shannons[1] out on Lake Kaweah. Rhodes had owned the boat for just a few days. While out on the lake, Rhodes was driving when six-year-old Haley fell out of the boat. Haley's mother, Connie, attempted to grab Haley as she fell overboard but was unsuccessful. Haley fell in the water and was apparently run over or somehow hit by the boat's propeller, resulting in severe injuries to her arm. Haley was transported to a hospital and ultimately brought this suit.

On June 3, 1999, the Shannons filed a complaint against Rhodes alleging general negligence. The Shannons contend, among other things, that Rhodes negligently failed to make sure his passengers were properly seated before accelerating the boat.[2] The complaint alleged, in pertinent part:

[1]Though Connie Shannon's 15-year-old son John has the last name of Shields, we will refer to the family as the Shannon family when referring to appellants collectively.

[2]There is no dispute over the facts relevant to deciding the legal issue before us, though the parties do disagree over each other's generalizations of the facts. Along those lines, the parties include extensive details of Rhodes's alleged negligence; however, neither we nor the trial court decides whether Rhodes was in fact negligent (i.e., whether he *breached* a duty of

"Mr. Rhodes operated his motor-boat in a negligent manner, causing Haley Shannon to be thrown over board and seriosly [*sic*] injured by the boat propeller.

"Haley's brother, John Shields, and sister, Samantha Shannon, were present and witnessed the serious injury to Haley, and as a result suffered severe emotional distress."

Rhodes answered the complaint June 29, 1999, asserting the defense of assumption of risk, and filed a motion for summary judgment on January 27, 2000. Rhodes's motion contended the doctrine of primary assumption of risk barred the Shannons' claims, and, alternatively, Rhodes attempted to disprove causation and sought summary adjudication on the separate issue of whether Haley's siblings could prove a claim for emotional distress. The Shannons timely opposed the motion, arguing primary assumption of risk did not apply and that there were disputed questions of fact regarding causation and emotional distress damages. After announcing its tentative decision to grant the motion for summary judgment, the trial court heard argument on March 1, 2000. The court issued its order on March 1, 2000, granting the motion on the grounds that Rhodes owed Haley no duty of care because the doctrine of primary assumption of risk applied. Rhodes filed and served an amended judgment April 12, 2000. The Shannons timely appeal.

DISCUSSION

I

*Did Rhodes Owe Haley a Duty of Care?*

A.  *Standard of Review*

■ A defendant moving for summary judgment must show either (1) that one or more elements of the plaintiff's cause of action cannot be established, or (2) "that there is a complete defense to that cause of action." (Code Civ. Proc., § 437c, subd. (o)(2).) "[T]he defendant has the initial burden to show that undisputed facts support each element of the affirmative defense." (*Bacon v. Southern Cal. Edison Co.* (1997) 53 Cal.App.4th 854, 858 [62 Cal.Rptr.2d 16].) The application of the affirmative defense of primary assumption of risk requires a legal conclusion that "by virtue of the

---

care). Instead, the legal question is whether a negligence claim against him is barred as a matter of law (i.e., whether he *had* a duty of care). We do not, therefore, include every "disputed" factual detail regarding his alleged negligence. To the extent disputed facts are relevant to Rhodes's claim below that he established a lack of causation as a matter of law, we discuss them in that portion of the opinion.

nature of the activity and the parties' relationship to the activity, the defendant owes no legal duty to protect the plaintiff from the particular risk of harm that caused the injury." (*Knight, supra,* 3 Cal.4th at pp. 314-315.) Thus, the existence and scope of a defendant's duty of care is determined by the court, and determination of the elements upon which the basis for the duty depends must be resolved as a matter of law by the court. Issues of law are reviewed by this court de novo. (*Staten v. Superior Court* (1996) 45 Cal.App.4th 1628, 1635 [53 Cal.Rptr.2d 657]; *Owens v. Kings Supermarket* (1988) 198 Cal.App.3d 379, 385 [243 Cal.Rptr. 627] ["The issue whether a duty exists is a question of law to be determined by the court, and is reviewable de novo."].) Accordingly, like the trial court, we analyze the nature of the boating activity engaged in here and both Rhodes's and Haley's relationship to that activity in order to determine whether, "as a matter of public policy, the defendant should owe the plaintiffs a duty of care." (*Neighbarger v. Irwin Industries, Inc.* (1994) 8 Cal.4th 532, 541 [34 Cal.Rptr.2d 630, 882 P.2d 347].)

## B. *The Nature of the Activity*

■ Appellants contend that the trial court erred because the primary assumption of risk doctrine should not apply to bar the claim of a passenger in a ski boat being used for a ride around a lake. Appellants argue that a passenger riding in a boat simply is not engaged in the type of activity the *Knight* court intended to reach with the doctrine of primary assumption of risk. Respondent contends that recreational boating is a "sport" within the meaning of *Knight*. We conclude appellant has the better view.

Generally, of course, "persons have a duty to use due care to avoid injury to others, and may be held liable if their careless conduct injures another person. (See Civ. Code, § 1714.)" (*Knight, supra,* 3 Cal.4th at p. 315.) *Knight* altered this general rule as it applies to a sports setting. The parties do not dispute these basic principles, but diverge in their reading of *Knight,* and cases interpreting *Knight*, on whether a passenger in a ski boat is participating in a "sport or recreational activity" intended to be covered by the doctrine of primary assumption of risk.

Our analysis begins by examining with what activity the *Knight* court was concerned. In *Knight*, the court came to the commonsense conclusion that when two people are playing a sport together one should not be liable to the other for injuries sustained while playing that sport absent some recklessness or intentional misconduct. (*Knight, supra,* 3 Cal.4th at p. 320.) The parties in *Knight* were engaged in a recreational game of football, clearly a physical activity and "sport" within any common understanding of the word.

In a companion case to *Knight, Ford v. Gouin* (1992) 3 Cal.4th 339 [11 Cal.Rptr.2d 30, 834 P.2d 724, 34 A.L.R.5th 769] (*Ford*), the court expanded the rule slightly and applied it to the noncompetitive, nonteam, sporting activity of waterskiing. Subsequent cases have applied the doctrine to a variety of sports and activities. (See *Mosca v. Lichtenwalter* (1997) 58 Cal.App.4th 551, 553 [68 Cal.Rptr.2d 58] [applying primary assumption of risk to sportfishing after noting "[h]ooking and catching fish require a great deal of knowledge, physical skill and attention"]; *Ferrari v. Grand Canyon Dories* (1995) 32 Cal.App.4th 248, 256 [38 Cal.Rptr.2d 65] [doctrine applies to river rafting, recognizing "[I]t is the thrill of challenging nature and running the rapids without mishap . . . [that] sets it apart from, for example, a trip down the giant slide at Waterworld"]; *Stimson v. Carlson* (1992) 11 Cal.App.4th 1201, 1205 [14 Cal.Rptr.2d 670] [applying doctrine to sailboating where plaintiff was one of the crew operating the sails and recognizing that sailing involves swinging booms and physical participation of crew]; *Bush v. Parents Without Partners* (1993) 17 Cal.App.4th 322, 328 [21 Cal.Rptr.2d 178] [recreational dancing not subject to the doctrine because it is simply not " 'a potentially dangerous activity or sport.' "].) While each of these cases had to examine the question of "what is a sport" on some level, it was not until seven years after our Supreme Court decided *Knight* that a court created a working definition for "sport" for purposes of the application of primary assumption of risk.

### 1. *Record v. Reason*

In *Record v. Reason* (1999) 73 Cal.App.4th 472 [86 Cal.Rptr.2d 547] (*Record*), the Second District explicitly considered the issue of whether a particular activity was a "sport" such that primary assumption of risk should apply to bar plaintiff's negligence claim. In *Record* the court considered the activity of "tubing" behind a motorboat. After extensively reviewing cases applying primary assumption of risk to a variety of activities, the court generally surmised that "[c]ompiling all of the distinguishing factors, it appears that an activity falls within the meaning of 'sport' if the activity is done for enjoyment or thrill, requires physical exertion as well as elements of skill, and involves a challenge containing a potential risk of injury." (*Id.* at p. 482.) The court concluded that holding on to a tube being pulled behind a boat involved "[c]ombining centrifugal force with a white-knuckled grip" and therefore fell within the meaning of "sport." (*Ibid.*) We agree with the basic criteria set forth by the *Record* court, and simply add that our review of *Knight* and subsequent cases leads us to conclude "sport" as intended by the *Knight* court necessarily entails some pitting of physical prowess (be it strength based [i.e., weight lifting], or skill based, [i.e., golf]) against another competitor or against some venue. The issue, of course, is whether a

passenger in a ski boat falls within this range of activity. Appellants rely on the standard set forth in *Record* to argue that recreational boating is not a sport and therefore assumption of risk should not apply to bar Haley's claim. They argue that being a passenger in a ski boat involves no challenge nor any potential risk of injury, and that because there is "no physical exertion" nor skill level involved in merely riding in a ski boat, it is not the type of activity encompassed by *Knight*. Respondent counters that many authorities consider "non-competitive recreational activities" to be subject to the doctrine of assumption of risk. In any event, respondent argues that even if the *Record* test were appropriate, "recreational boating arguably fits within its parameters."[3] As explained below, we agree with appellants' characterization that being a passenger in a boat under these circumstances is too benign to be subject to *Knight* and find respondent's case authority distinguishable.

### 2. *Other Boating Cases and Out-of-state Authority*

Respondent relies on *Ford,* to argue that the Supreme Court has explicitly considered boating a "sport." In *Ford,* however, the court explicitly used the language "noncompetitive *but active* sports activity" in applying the doctrine to waterskiing. (*Ford, supra,* 3 Cal.4th at p. 345, italics added.) A review of the reasoning set forth in *Ford* makes clear that the court focused on the physical skill and risk involved in the waterskiing itself to conclude that the activity of waterskiing was a sport, and the boat driver a coparticipant in that sport. (*Ibid.* [noting "the skier has undertaken vigorous, athletic activity, and the ski boat driver operates the boat in a manner that is consistent with, and enhances, the excitement and challenge of the active conduct of the sport"].) The same certainly cannot be said of a mere passenger in a boat, particularly when the boat is simply a pleasurable means of transportation. To conclude otherwise would mean that because a car can be used in a race, that riding in a car is participation in a sport. We perceive the catagorization as a sport to turn not just on the thing used (in this case a boat) but also on the manner of use.

---

[3]Respondent emphasizes that boating involves speed, rapid acceleration, sharp turns, choppy waters and other potential hazards and obvious risks, including the risk of falling overboard. However, regardless of the "risks" that may be inherent in riding in a boat, the existence of risk does not automatically call for the application of the doctrine of assumption of risk. Rather, unless being a passenger in a boat is considered by this court as the equivalent of being a participant in a sporting or recreational activity covered by *Knight*, then assumption of risk simply does not apply and the inherent "risks" of the activity play no part in the question of whether a defendant can be liable for his negligent activity. Likewise, respondent's reliance on spectator cases is similarly distinguishable because, once we conclude an activity is not a sport to which the doctrine applies, the rationale of the "no duty" analysis as applied to, for example, spectators at a baseball game, is simply inapplicable. (See *Knight, supra,* 3 Cal.4th at p. 317 [analyzing prior Court of Appeal baseball spectator case under "no duty" analysis set forth in *Knight*].)

The other California authorities relied on by respondent to assert that courts have applied the doctrine to cases in which plaintiff was a passenger in a recreational boat are likewise distinguishable. In *Stimson v. Carlson, supra,* 11 Cal.App.4th 1201, the plaintiff was an active crewmember on a sailboat participating in sailing, not a mere passenger. In *Mosca v. Lichtenwalter, supra,* 58 Cal.App.4th 551, the plaintiff was a fisherman on a fishing boat, injured by the sporting activity he was engaged in (the hook of another fisherman), not by any alleged negligence on the part of the boat's operator. In *Ferrari v. Grand Canyon Dories, supra,* 32 Cal.App.4th 248, the plaintiff was part of a river rafting excursion, an activity necessarily involving physical participation of those in the raft in order to navigate the river. Respondent points us to no case, and we have found none, that applies the doctrine of primary assumption of risk to bar the claim of a passenger of a boat whose only participation is being in the boat.

Similarly distinguishable is out-of-state authority respondent points to in which the participants are clearly engaging in activity of a physical sort or where the court applies the assumption of risk doctrine based on the plaintiff's subjective knowledge of the risk involved, which is not the duty-based doctrine applied in California. (See *Marchetti v. Kalish* (1990) 53 Ohio St.3d 95 [559 N.E.2d 699] [doctrine applied to game of "kick the can"]; *Bennet v. Town of Brookhaven* (1996) 233 A.D.2d 356 [650 N.Y.S.2d 752] [doctrine applied where plaintiff chose to remain on boat after it was being pulled into dock even though it was obvious the ramp had no bulkheading and the boat could tip]; *Havens v. Kling* (2000) 277 A.D.2d 1017 [715 N.Y.S.2d 812] [11-year-old plaintiff struck in head by golf ball while waiting to tee off]; *Ritchie-Gamester v. City of Berkeley* (1999) 461 Mich. 73 [597 N.W.2d 517] [doctrine applied to skaters in skating rink].) In sum, the authority relied on by respondent does not persuade us that a passenger in a boat must be considered a participant in a sporting activity simply because the injury involves a boat.

### 3. *Chilling Effect*

We next address respondent's vehement assertion that recreational boating would be seriously curtailed if primary assumption of risk were not available to those engaged in the activity of boating. We agree that whether the application of the assumption of risk doctrine will have a chilling effect on the vigorous involvement in the activity is one of the factors our Supreme Court has instructed us to consider, and we must point out that we do not hold that primary assumption of risk will *never* be applicable in the boating context. (*Knight, supra,* 3 Cal.4th at pp. 318-319.) Under the facts of this case, however, we do not agree that imposing a duty of care on respondent

will create a "chilling" effect on the activity of recreational boating. In *Ford, supra*, 3 Cal.4th at page 345, the court reasoned, for example: "Imposition of legal liability on a ski boat driver for ordinary negligence in making too sharp a turn, for example, or in pulling the skier too rapidly or too slowly, likely would have the same kind of undesirable chilling effect on the driver's conduct that the courts in other cases feared would inhibit ordinary conduct in various sports. As a result, holding ski boat drivers liable for their ordinary negligence might well have a generally deleterious effect on the nature of the sport of waterskiing as a whole. Additionally, imposing such liability might well deter friends from voluntarily assisting one another in such potentially risky sports." In this case, however, even if there were some "chilling effect" to the extent a ski boat operator drives his boat more cautiously, or, for example, takes extra measures to ensure his passengers are seated properly, that will not change the nature of the activity of "recreational" boating. There is nothing inherent in the activity of recreational boating that requires the driver to "throw caution to the wind" in order to enjoy the activity. The policy behind application of the doctrine of primary assumption of risk in sporting cases is "that vigorous participation in the sport likely would be chilled, and, as a result, the nature of the sport likely would be altered, in the event legal liability were to be imposed on a sports participant for ordinary careless conduct." (*Ford, supra*, 3 Cal.4th at p. 345.) It simply cannot be said that the "nature" of the activity of recreational boating will be altered if boat drivers are required to exercise due care, especially when, as here, they have small children on board. To the contrary, in our view the activity is more likely to be *enhanced* if all boaters are under a duty to not engage in negligent or careless conduct. Additionally, *Ford* relied on the fact that "the ski boat driver operates the boat in a manner that is consistent with, and enhances, the excitement and challenge of the active conduct of the sport [waterskiing]." (*Ford, supra*, 3 Cal.4th at p. 345.) The same cannot be said of a recreational boat driver's goal (and duty) in relation to passengers on his boat.

Moreover, on a commonsense level, we simply cannot conclude that the use of the boat in this case reasonably implicates a "sport" within any understanding of the word. There is nothing in this record to indicate the boat here was anything more than a mode of transportation. Nothing about the type of boating engaged in here required participation by the passengers, there is nothing competitive or physically challenging about riding in the boat, and it certainly requires no special skill nor physical prowess to do so. Just because the means of the activity (the boat) may at other times be used for sporting purposes does not automatically transform the boat itself into a "sporting activity." Certainly no one would consider being a passenger in a car on the way to work a "sport," and yet we could all agree that stock car

racing is a sport. Both involve cars; one is a sport, one is not. Nor are we convinced, as respondent implies, that the fact some activity is done "for pleasure" automatically transforms it into qualifying for the protections of the doctrine of primary assumption of risk. Rather, as we previously explained, whether a sport or activity qualifies for the protections of the doctrine of assumption of risk requires a more thorough analysis than merely deeming it recreational or pleasurable.

We therefore conclude, under the facts of this case, that where a driver of a boat takes passengers out on his boat for a simple ride around a lake, the nature of the activity is not one that brings it within the *Knight* rule and therefore the doctrine of primary assumption of risk does not apply.[4]

II

*Applicability of Harbors and Navigation Code Section 655, Subdivision (a)*

Appellants also contended in opposition to the motion for summary judgment that Harbors and Navigation Code section 655, subdivision (a) created "prima facie evidence of reckless or negligent operation" and therefore precluded summary judgment. Our conclusion that a duty of care was owed by Rhodes to Haley under the facts of this case makes resolution of whether or not Harbors and Navigation Code section 655, subdivision (a) creates a duty greater than may otherwise be imposed under *Knight* unnecessary. (See *Cheong v. Antablin* (1997) 16 Cal.4th 1063 [68 Cal.Rptr.2d 859, 946 P.2d 817] [split of Supreme Court on issue of whether a statutorily created duty replaces the *Knight* standard where statute applies]; see also *Distefano v. Forester* (2001) 85 Cal.App.4th 1249, 1267-1268 [102 Cal.Rptr.2d 813] [adopting Justice Chin's concurrence in *Cheong*, which reasoned that statute does not replace *Knight* unless Legislature amends statute after *Knight* was decided to expressly do so].) Because we conclude that Rhodes owed Haley a duty of care under common law negligence law, we need not resolve whether the statute also imposes a duty of care.

III*

*There Is a Question of Fact Regarding Causation*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

[4]Because we conclude the boating at issue here is not a "sport," we need not address appellants' argument that primary assumption of risk cannot be applied to a six-year-old child. We also recognize that Rhodes contends that Haley's mother was actually responsible for ensuring Haley did not fall overboard. That may be so; but that is a factual decision left to the trier of fact to sort out under comparative fault principles.

*See footnote, *ante*, page 792.

## DISPOSITION

The judgment is reversed. Costs to appellants.

Levy, J., and Wieland, J.,* concurred.

---

*Judge of the Madera Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.