[No. B113169. Second Dist., Div. Six. Jan. 28, 1998.]

DALE DOMENGHINI, Plaintiff and Appellant, v.
GARY EVANS et al., Defendants and Respondents.

**COUNSEL**

Belsher & Becker and John W. Belsher for Plaintiff and Appellant.

McCarthy & Kroes and Jaye Heybl for Defendants and Respondents.

**OPINION**

**YEGAN, J.**—Dale Domenghini appeals from the judgment entered after the trial court granted respondents Gary Evans's and Jane Evans's (the Evanses) motion for summary judgment. Domenghini was injured during a cattle roundup, when a large calf that he and two other men were wrestling to the ground hit its head against Domenghini's leg. The calf is owned by the

Evanses. The trial court granted the Evanses' motion for summary judgment after concluding that Domenghini's action was barred by the doctrine of primary assumption of risk. We affirm.

Domenghini was injured in 1995 during a cattle roundup held on a ranch that is owned by his grandmother and mother. Domenghini helps to maintain the ranch and, since 1973, has run some cattle on it. The Evanses lease the right to run cattle on the ranch. Roundups are conducted annually, to brand, castrate, dehorn and vaccinate calves. Domenghini participated in the 1995 roundup because it involved his own cattle, as well as cattle belonging to the Evanses. He was not an employee of the Evanses, testifying instead that it "would be fair[]" to characterize the roundup as "a team effort[.]" Domenghini testified that he was at the roundup because he "had some cattle to work and we've always in the past worked together."

During a roundup, adult cattle and calves are herded into separate corrals and the calves are individually restrained so they can be branded, castrated, vaccinated and dehorned. Calves may be restrained using a mechanical chute, or by horsemen who rope the calf, so that other workers, called "muggers," can throw it to the ground. According to Domenghini, it is common to "get hit and kicked and shoved around[,]" while trying to restrain a calf with horsemen and ropes. He testified: "You try not to get hit, but it's very common that they throw their heads around."

At the 1995 roundup, as in previous years, the calves were restrained by horsemen, "muggers" and ropes. Domenghini believed this method was used because it made the roundup "more of a fun event . . . ," like a rodeo. Domenghini was not riding or "mugging" that day. Instead, he was involved in branding and castrating.

Domenghini was injured late in the afternoon, as two men tried unsuccessfully to throw an exceptionally large calf to the ground. The men called for help and Domenghini joined the effort. When they got the calf on the ground, it was Domenghini's job to remove a rope from around the calf's head and use it to restrain the calf's front feet. This was very difficult because the calf was kicking and throwing its head. After about three minutes, Domenghini was able to lift the calf's right foot into the rope. During that process, the calf threw its head back and struck Domenghini's leg. Gary Evans was not present when the injury occurred. Domenghini could not recall whether Jane Evans was present at the time.

The blow caused severe pain and swelling in the leg. Domenghini sought medical treatment for the injury the next day. He received some pain

medication and was told to elevate his foot. Domenghini had to leave the leg elevated for a period of weeks and testified that he continues to suffer from pain, numbness and weakness in that leg.

■ We review a summary judgment de novo, to determine whether triable issues of material fact exist. (*Szadolci* v. *Hollywood Park Operating Co.* (1993) 14 Cal.App.4th 16, 19 [17 Cal.Rptr.2d 356].) ■ The question here is one of law, i.e., whether the Evanses had a duty to protect Domenghini from injury during the roundup. (*Knight* v. *Jewett* (1992) 3 Cal.4th 296, 313 [11 Cal.Rptr.2d 2, 834 P.2d 696].) The trial court properly concluded that the doctrine of primary assumption of risk barred Domenghini's action.

■ As the court explained in *Knight* v. *Jewett*, *supra*, 3 Cal.4th 296, primary assumption of risk bars the recovery of damages for injuries caused by the plaintiff's participation in an activity, "where, by virtue of the nature of the activity and the parties' relationship to the activity, the defendant owes no legal duty to protect the plaintiff from the particular risk of harm that caused the injury . . . ." (*Id.* at pp. 314-315; see also *Donohue* v. *San Francisco Housing Authority* (1993) 16 Cal.App.4th 658, 664 [20 Cal.Rptr.2d 148].) The doctrine bars suit against a participant in a sporting event, unless the participant "intentionally injures another player or engages in reckless conduct that is totally outside the range of the ordinary activity involved in the sport. [Citation.]" (*Knight* v. *Jewett*, *supra*, 3 Cal.4th at p. 318; see also *Cheong* v. *Antablin* (1997) 16 Cal.4th 1063, 1067-1068 [68 Cal.Rptr.2d 859, 946 P.2d 817]; *Herrle* v. *Estate of Marshall* (1996) 45 Cal.App.4th 1761, 1765 [53 Cal.Rptr.2d 713].)

■ Domenghini himself described the roundup as a sporting event in which he was a participant, not an employee or agent of the Evanses. He also testified that it is common for participants in a roundup to get kicked or hit by a calf. Primary assumption of risk bars Domenghini's claim against the Evanses because the risk that one will be hit by a calf's head is inherent in the nature of a cattle roundup. "[T]his a classic situation where a defendant's ordinary duty of care is *negated* due to the nature of the activity and the relationship of the defendant to the plaintiff. [Fn. omitted.]" (*Cohen* v. *McIntyre* (1993) 16 Cal.App.4th 650, 655 [20 Cal.Rptr.2d 143].)

The California Supreme Court has recently recognized that primary assumption of the risk is applicable to alpine skiing because of the inherent risk of skiers unintentionally colliding with each other. (*Cheong* v. *Antablin*, *supra*, 16 Cal.4th at p. 1067.) In a roundup the inherent risk is greater because contact with cattle is intended.

While we do not pretend to read the mind of a bovine animal, it seems apparent that these animals do not want to be lassoed, thrown to the ground and tied up so that their horns and other anatomical parts can be severed. The prospect that "muggers" will not be gentle certainly must loom on the animal's horizon. That the animals will resist the "muggers" is certain enough to bring an old-fashioned roundup within the primary assumption of the risk doctrine.

Domenghini argues that primary assumption of risk does not apply here because, under their lease of the ranch, the Evanses controlled the manner in which the roundup was conducted. They negligently chose to use an unsafe method of catching and restraining the calves when they ignored the safer "mechanical chute" method, in favor of the more sporting, picturesque "horsemen" method. Domenghini's argument boils down to the claim that the Evanses owed him a duty to sponsor a less dangerous sort of event altogether. We must reject this argument.

Our inquiry focuses on "the nature of the activity or sport in which the defendant is engaged and the relationship of the defendant and the plaintiff to that activity or sport." (*Knight* v. *Jewett, supra*, 3 Cal.4th at p. 309.) The activity at issue here is an old-fashioned cattle roundup using horsemen and ropes, not mechanical chutes. Kicking and head butting are inherent risks of participation in this activity. Appellant voluntarily agreed to participate in this activity. Whether similar risks are present at cattle roundups using mechanical chutes, is beside the point.

By analogy, if someone is invited to play football and is informed that it is tackle football, as opposed to touch football, he or she can decline to play. Having elected to participate in tackle football, the participant assumes that he or she is more likely to suffer injury. So it is with an old-fashioned roundup.

The judgment is affirmed. Costs to respondents.

Stone (S. J.), P. J., and Gilbert, J., concurred.