[No. B113258. Second Dist., Div. Four. Apr. 7, 1998.]

ERIC SHELLY, Plaintiff and Appellant, v.
WILLIAM STEPP et al., Defendants and Respondents.

**COUNSEL**

Rose, Klein & Marias and Richard G. Barone for Plaintiff and Appellant.

Parker Stanbury and Karie Ellen Schroeder for Defendants and Respondents.

## OPINION

## BARON, J.—

### BACKGROUND

Appellant Eric Shelly was injured when a racehorse he was exercising at Los Angeles County Fairplex Park collided with another being ridden by Reggie Burleson. Appellant brought a complaint for negligence against the Los Angeles County Fair Association (the owner of Fairplex Park), the State of California, the County of Los Angeles, Burleson, and respondents William Stepp and Jim Lindsey. Respondents Stepp and Lindsey were identified as the employers, supervisors, and agents of Burleson, and the owners, controllers, maintainers, supervisors, and trainers of the horse Burleson was riding at the time of the accident, Coach Scarlet. The complaint alleged that Coach Scarlet was "easily spooked, difficult to control, and too young to be ridden and trained at a time when the more mature horses such as the one being ridden by [appellant] were on the race track," and that Coach Scarlet "was incapable of being ridden on the track at said time and place unless an additional horse and rider were utilized to properly control said young horse."

The Los Angeles County Fair Association moved for summary judgment. Respondents joined in the motion. The motion was based on the following facts: "At the time of the incident, [appellant], an experienced exercise rider, was acting in the course and scope of his employment as a professional exercise rider"; "[appellant's] injuries occurred as a result of his falling [off] of his employer's horse, Aftermath; [appellant] fell from his horse after an interaction or collision with another horse (Coach Scarlet) during a training run"; [appellant's] injuries occurred as a result of a known, and apparent consequence of exercising thoroughbred horses."

The following evidence was submitted to establish the latter fact: (1) appellant's deposition testimony in which he stated that he was exercising his horse at almost a full gallop; that he first saw Coach Scarlet standing near the rail when he was 300 yards away; that the horse should not have been standing in that place; that he decided when he first saw Coach Scarlet not to pull up or slow down because this sort of thing happened regularly and he believed the horse would be moved out of his way in time to avoid a collision; that he attempted to check his horse when they were about 200 yards away; that at that point, he had no room to turn his horse to the left or right; that Coach Scarlet was sidestepping toward the rail at the time of the collision; that he felt he had no choice but to run into the back of Coach

Scarlet; and that riding thoroughbred horses has its dangers; and (2) the "[l]ack of any evidence that [appellant's] injuries were not the result of a known and apparent consequence of [appellant's] exercising thoroughbred horses."

Appellant inserted three additional facts in his opposition and statement of disputed and undisputed facts: that Burleson was acting within the course and scope of his employment as an exercise rider for respondent Lindsey at the time of the accident; that respondent Stepp was acting in the course and scope of his employment as a trainer for respondent Lindsey at the time of the accident; and that Jerry Davis, the "outrider" watching the track, was acting in the course and scope of his employment for the Los Angeles County Fair Association at the time of the accident. Otherwise, appellant did not dispute defendants' version of the uncontested facts, including the fact that his injuries occurred as the result of "a known and apparent consequence of . . . exercising thoroughbred horses." Instead, he contends that this was irrelevant "inasmuch as . . . knowledge of a risk is irrelevant in determining whether the [primary] assumption-of-risk doctrine applies . . . ."

Concluding that the primary assumption of risk doctrine did apply, the court granted the motion for summary judgment. Judgment was entered in favor of respondents and the Los Angeles County Fair Association. Appeal was taken from the judgment in favor of respondents.[1]

## DISCUSSION

■ The issue on appeal is whether or not the primary assumption of risk doctrine relied on by the trial court in granting summary judgment applies to the activity involved in this case: training and exercising race-horses. As the Supreme Court recognized in *Knight* v. *Jewett* (1992) 3 Cal.4th 296, 309 [11 Cal.Rptr.2d 2, 834 P.2d 696] (plurality opinion), assumption of risk has not been entirely subsumed by the doctrine of comparative negligence announced in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393]. In *Li*, the court had said: ". . . As for assumption of risk, we have recognized in this state that this defense overlaps that of contributory negligence to some extent and in fact is made up of at least two distinct defenses. 'To simplify greatly, it has been observed . . . that in one kind of situation, to wit, where a plaintiff unreasonably undertakes to encounter a specific known risk imposed by a defendant's negligence, plaintiff's conduct, although he may encounter that risk in a prudent manner, is in reality a form of contributory negligence . . . . Other kinds of situations within the doctrine of assumption of risk are

---

[1]Appellant apparently settled with the Los Angeles County Fair Association.

those, for example, where plaintiff is held to agree to relieve defendant of an obligation of reasonable conduct toward him. Such a situation would not involve contributory negligence, but rather a reduction of defendant's duty of care.' [Citations.] We think it clear that the adoption of a system of comparative negligence should entail the merger of the defense of assumption of risk into the general scheme of assessment of liability in proportion to fault in those particular cases in which the form of assumption of risk involved is no more than a variant of contributory negligence. [Citation.]" (13 Cal.3d at pp. 824-825, italics omitted.)

■ The court explained in *Knight* v. *Jewett* that ". . . the distinction in assumption of risk cases to which the *Li* court referred in this passage was not a distinction between instances in which a plaintiff unreasonably encounters a known risk imposed by a defendant's negligence and instances in which a plaintiff reasonably encounters such a risk. Rather, the distinction to which the *Li* court referred was between (1) those instances in which the assumption of risk doctrine embodies a legal conclusion that there is 'no duty' on the part of the defendant to protect the plaintiff from a particular risk—the category of assumption of risk that the legal commentators generally refer to as 'primary assumption of risk'—and (2) those instances in which the defendant does owe a duty of care to the plaintiff but the plaintiff knowingly encounters a risk of injury caused by the defendant's breach of that duty—what most commentators have termed 'secondary assumption of risk.' Properly interpreted, the relevant passage in *Li* provides that the category of assumption of risk cases that is not merged into the comparative negligence system and in which the plaintiff's recovery continues to be completely barred involves those cases in which the defendant's conduct did not breach a legal duty of care to the plaintiff, i.e., 'primary assumption of risk' cases, whereas cases involving 'secondary assumption of risk' properly are merged into the comprehensive comparative fault system adopted in *Li*." (*Knight* v. *Jewett, supra,* 3 Cal.4th at p. 308, fns. omitted.)

From this analysis, the following rule emerged: "[I]n 'primary assumption of risk' cases—where the defendant owes no duty to protect the plaintiff from a particular risk of harm—a plaintiff who has suffered such harm is not entitled to recover from the defendant, whether the plaintiff's conduct in undertaking the activity was reasonable or unreasonable." (*Knight* v. *Jewett, supra,* 3 Cal.4th at p. 309, italics omitted.) The question of whether, in view of the activity in which the parties were involved, the defendant owed a duty of care to the plaintiff "does not turn on the reasonableness or unreasonableness of the plaintiff's conduct, but rather on the nature of the activity or sport in which the defendant is engaged and the relationship of the defendant and the plaintiff to that activity or sport." (*Ibid.*) Or, as stated in *Bushnell* v.

*Japanese-American Religious & Cultural Center* (1996) 43 Cal.App.4th 525, 530 [50 Cal.Rptr.2d 671]: "[I]n all cases the nature of the activity, the relationship of the defendant to the activity and the relationship of the defendant to the plaintiff must be examined. It must then be determined, in light of the activity and these relationships, whether the defendant's conduct at issue is an 'inherent risk' of the activity such that liability does not attach as a matter of law." (Accord, *Dyer* v. *Superior Court* (1997) 56 Cal.App.4th 61, 68 [65 Cal.Rptr.2d 85].)

The activity involved in *Knight* v. *Jewett* was a touch football game. Plaintiff, while playing the game, had been knocked over and had her finger stepped on by another player. The injury led to the loss of her finger. Looking at the question of whether rough play was a risk inherent in the nature of the sport or integral to the sport, the court noted: "In some situations, . . . the careless conduct of others is treated as an 'inherent risk' of a sport, thus barring recovery by the plaintiff. For example, numerous cases recognize that in a game of baseball, a player generally cannot recover if he or she is hit and injured by a carelessly thrown ball [citation], and that in a game of basketball, recovery is not permitted for an injury caused by a carelessly extended elbow [citation]." (3 Cal.4th at p. 316.) After an extensive review of situations involving sports and similar activities in which a duty of care was found to exist or not exist, the court concluded that "a participant in an active sport breaches a legal duty of care to other participants—i.e., engages in conduct that properly may subject him or her to financial liability—only if the participant intentionally injures another player or engages in conduct that is so reckless as to be totally outside the range of the ordinary activity involved in the sport." (*Id.* at p. 320, fn. omitted.)

Applying this rule, the Supreme Court in *Knight* v. *Jewett* concluded that no duty of care was owed to plaintiff therein. (3 Cal.4th at pp. 320-321.) In a companion case, *Ford* v. *Gouin* (1992) 3 Cal.4th 339 [11 Cal.Rptr.2d 30, 834 P.2d 724, 34 A.L.R.5th 769], the court similarly concluded that a water-skier injured when the driver of the ski boat negligently brought the boat too close to the shore causing the skier to hit a tree branch overhanging the channel through which he was skiing barefoot and backwards, could not state a cause of action against the driver. In so holding, the court reiterated: "[I]n general the legal duty applicable to a coparticipant in an active sport simply is a duty to avoid either intentionally injuring another participant or engaging in conduct so reckless as to bring it totally outside the range of the ordinary activity involved in the sport. A coparticipant in an active sport ordinarily bears no liability for an injury resulting from conduct in the course of the sport that is merely careless or negligent." (3 Cal.4th at p. 342.) The court confirmed that this rule applied in the context of noncompetitive sports, such as waterskiing.

Since *Knight* v. *Jewett* and *Ford* v. *Gouin*, the primary assumption of risk doctrine has been applied to bar recovery where: A snow skier was injured when his friend negligently collided with him (*Cheong* v. *Antablin* (1997) 16 Cal.4th 1063 [68 Cal.Rptr.2d 859, 946 P.2d 817]); a student suffered a broken leg while attempting to perform an exercise during a judo class (*Bushnell* v. *Japanese-American Religious & Cultural Center, supra,* 43 Cal.App.4th 525);[2] a plaintiff was injured during a cattle roundup when a large calf, which he and two other men were wrestling to the ground, hit its head against plaintiff's leg (*Domenghini* v. *Evans* (1998) 61 Cal.App.4th 118 [70 Cal.Rptr.2d 917]); an ice-skater was cut by the blade of another skater during a group skating session (*Staten* v. *Superior Court* (1996) 45 Cal.App.4th 1628 [53 Cal.Rptr.2d 657]); a student enrolled in a football instruction class was injured when he collided with another player during a practice drill (*Fortier* v. *Los Rios Community College Dist.* (1996) 45 Cal.App.4th 430 [52 Cal.Rptr.2d 812]); and a novice sailor was injured by the sail while watching his fellow crew members execute a turn (*Stimson* v. *Carlson* (1992) 11 Cal.App.4th 1201 [14 Cal.Rptr.2d 670]).

Appellant's plea to distinguish the cited cases because he was not participating in a sport, but was instead exercising a horse in preparation for an upcoming competitive event, lacks merit. For participation to fall within the primary assumption of risk category, the sporting activity in question need not be part of a competitive matchup. It may involve practice for the sport. (See, e.g., *Bushnell* v. *Japanese-American Religious & Cultural Center, supra,* 43 Cal.App.4th 525; *Staten* v. *Superior Court, supra,* 45 Cal.App.4th 1628; *Fortier* v. *Los Rios Community College Dist., supra,* 45 Cal.App.4th 430.)

In each of these cases, no duty of care was found because, although a coparticipant in the sport had engaged in arguably negligent behavior, such behavior had not been intentional or reckless and did not increase the risks to the injured participant over and above those inherent in the sport. The same is true here. Appellant contends that Burleson was negligent in failing to utilize a second horse and rider to control a particularly unruly or untrained racehorse. Even if such allegations were true, the conduct did not increase the risks inherent in the sport of horseracing. Racehorses are by their nature

---

[2]In *Bushnell*, the defendant was an instructor acting as a practice partner. Where the defendant is acting as an instructor, i.e., a person with superior knowledge of the risks involved in the sport, the plaintiff/student may be looking to the defendant to judge whether a particular activity can be undertaken safely by a person with the plaintiff's level of skill. In that situation, the result is likely to be different. (See, e.g., *Galardi* v. *Seahorse Riding Club* (1993) 16 Cal.App.4th 817, 822-823 [20 Cal.Rptr.2d 270] [holding that a riding instructor owed duty of care to a student]; *Tan* v. *Goddard* (1993) 13 Cal.App.4th 1528, 1534-1535 [17 Cal.Rptr.2d 89] [same].)

difficult to control. It is not unusual for a horse to come to a sudden stop, rear up, or sidestep and thereby cause a collision with another horse and rider following close behind.[3] The fact that in this particular instance negligence may have contributed to the collision does not alter the conclusion that appellant assumed the risk of being injured in this manner when he agreed to engage in an activity which required him to maneuver a spirited racehorse around a track at near top speed in close proximity to others engaged in the same dangerous activity. We must conclude that this case falls into the category of primary assumption of risk and that no duty of care was owed appellant by respondents.

DISPOSITION

The judgment is affirmed.

Epstein, Acting P. J., and Czuleger, J.,* concurred.

---

[3]Appellant himself testified that he did not immediately rein in his horse after catching sight of Coach Scarlet stalled in the track ahead because this sort of thing was such a common occurrence he would never get his horse exercised if he stopped every time it happened.

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.