Filed 10/27/15  Carter v. Heitzler CA3

**NOT TO BE PUBLISHED**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (El Dorado)

----

| | |
|---|---|
| JUNE CARTER, | C076833 |
| Plaintiff and Appellant, | (Super. Ct. No. PC 20120642) |
| v. | |
| GERALD HEITZLER et al., | |
| Defendants and Respondents. | |

Plaintiff June Carter, an experienced equestrienne, brought this action for personal injuries after being thrown from a horse named IB Brilliant in February 2011 at Secret Valley Farm (a horse facility that defendants Gerald and Anita Heitzler owned and operated), because another horse (named Colton) that another defendant (who is not a party to this appeal) was riding spooked IB Brilliant.  The trial court granted summary judgment to defendants Heitzler, finding that they had not engaged in any conduct that increased risks inherent to horseback riding, and thus could claim the benefit of the

1

defense of primary assumption of the risk. Plaintiff Carter timely appealed from the subsequent judgment (which the presiding judge executed on behalf of the assigned judge who ruled on the matter).

Plaintiff insists there were triable issues of material fact regarding conduct that increased the risks inherent to horseback riding. We shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Under the historic paradigm for our de novo review of a motion for summary judgment, we first identify the material issues framed in the complaint. We then assess whether the moving party has presented evidence that establishes prima facie entitlement to judgment in the party's favor on these issues. If so, we consider whether the opponent has presented evidence creating a factual dispute with respect to any of these issues for a trier of fact. (*County of Sacramento v. Superior Court* (2012) 209 Cal.App.4th 776, 778-779.) We thus draw our facts from the showings of the parties in the trial court.

### 1.0 The Pleadings

The single cause of action for personal injury in the November 2012 complaint is charmingly succinct. In February 2011, plaintiff had just ridden IB Brilliant out of an arena at Secret Valley Farm, which is surrounded by a metal boundary fence. The other defendant entered the arena with Colton, a horse all defendants knew to be "dangerous, unpredictable, and unfit to ride." Colton "went berserk" and ran into the metal fence near where plaintiff was still astride IB Brilliant. The resulting clamor spooked plaintiff's horse, and the horse threw her off. Defendants were negligent in their management or entrustment of the errant horse, and in their failure to warn or take precautions in the use of the horse.

2

These allegations squarely present the issue of the application of the doctrine of primary assumption of risk to recreational activities, because duty is an essential element of negligence. (*Eriksson v. Nunnink* (2011) 191 Cal.App.4th 826, 838 (*Eriksson*).)

Ordinarily, under California law each person has a duty to exercise reasonable care under the circumstances to others, and is liable to those injured as a result of a breach of this duty. (*Avila v. Citrus Community College Dist.* (2006) 38 Cal.4th 148, 160 (*Avila*).) When the Supreme Court abandoned the doctrine of contributory negligence in favor of comparative negligence in the 1970's, this led it to reconceptualize the doctrine of assumption of the risk. (*Id.* at p. 161.) Although this holding was originally a plurality decision, it is now firmly established that the doctrine of *primary* assumption of the risk absolves a defendant from *any* duty in the context of recreational activities (depending on the role the defendant plays in the situation) to minimize or protect a plaintiff from the *inherent* risks of an activity; as for the doctrine of *secondary* assumption of the risk (which is not at issue in this case), it simply applies the principles of comparative negligence where a duty *is* breached. (*Ibid.* & fn. 6 [majority of Supreme Court now embraces doctrine]; accord, *Nalwa v. Cedar Fair, L.P.* (2012) 55 Cal.4th 1148, 1158 (*Nalwa*) [six members of court rejecting reasons in dissent of Justice Kennard to abandon primary assumption of risk]; *Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1004 (*Kahn*).)

## 2.0  Supporting Evidence

In support of their motion for summary judgment, defendants produced the depositions of plaintiff and her trainer, Howard Roberts. From these sources, defendants asserted the following as undisputed facts.

Plaintiff had been living in a bedroom in defendants' residence at the horse facility since October 2010, being (at least then) good friends with them. As of the February 2011 incident, plaintiff was the owner of two horses and had decades of experience riding

horses, and her trainer believed she had excellent riding skills. She (and her trainer) is thus well aware that riding horses carries a risk of injury from being thrown, even with well-mannered horses. In 2007, plaintiff had executed a release of Secret Valley Farm "from all liability for any act of negligence or want of ordinary care . . . arising out of [her] participation in any horse related activities" at the facility, and in connection with boarding her previous horse, Ricci, again agreed to release Secret Valley Farm from liability for personal injury resulting from horse-related activities "[e]xcept only in the case of gross negligence or willful abuse."

While at Secret Valley Farm, plaintiff rode five to seven days a week, alternating between her own horses and others at the request of Anita Heitzler. At least several times in the past she had seen horses run into the fence surrounding the arena. She had also seen horses throw their riders, and spook other horses by their conduct.

Plaintiff had previously seen Colton being ridden a couple of times by the husband of the other defendant (because the latter was pregnant at the time), and did not notice anything unusually dangerous about Colton other than his being hard to handle; plaintiff acknowledged that a horse not taking direction well is not unusual. Both the other defendant and her husband were skilled riders. Plaintiff's trainer had seen the husband ride Colton four or five times a week for three months. The trainer believed only a very experienced rider could handle Colton without the horse getting out of control, and he told Anita Heitzler that Colton should not be in the arena with any inexperienced riders. (While the husband and plaintiff's trainer both thought Colton should be inside the arena only by himself, plaintiff conceded that would not have prevented the incident.)

Plaintiff was astride IB Brilliant, her fifth mount of the day. She had just ridden out of the arena, and was about 35 feet away talking to someone. At about the same time, the other defendant entered the arena with Colton. Other than riding a difficult-to-control horse, the other defendant did not do anything untoward in mounting him. However, as

4

she began to mount him, Colton shook her off; she slid to the ground and Colton began cantering around the arena. Plaintiff heard the sound of a horse running inside the arena, followed by the sound of a horse hitting the fence. IB Brilliant began to buck, and threw plaintiff to the ground.

## 3.0  Opposition Evidence

Although plaintiff had objected to several of the above facts, the trial court overruled the objections. Plaintiff does not dispute the evidentiary rulings on appeal. Beyond her evidentiary objections and challenges to the legal significance of the above facts, plaintiff did not identify any triable issues in connection with them.

In essence, the gist of plaintiff's opposition (based on defendants' depositions and the declarations of plaintiff's trainer and another trainer) was that Colton was a bad, bad horse. To this end, she listed the following as "Additional Disputed Facts."

Plaintiff's trainer described Colton as having "serious attitude problems," being "unstable," "high strung," and "among the three worst-behaved and dangerous horses [he had] ever encountered." He had seen the husband being thrown at least twice, and also once walking Colton back after taking him out for a ride. As a result, the trainer had cautioned both Anita Heitzler and the other defendant (who had not ridden in several months because of her pregnancy) against the latter riding Colton in the arena.

Another trainer, David Alexander, also described Colton as "unstable" and "high strung" with a "bad attitude," who consequently required an experienced rider. Before the accident, he had also cautioned defendants not to allow anyone to ride Colton when "others were present" (it is unclear whether he meant just the arena or the general vicinity as well).

Anita Heitzler recalled that plaintiff's trainer had told her Colton had bucked off his rider. She had once seen the husband jump to the ground when the presence of sheep

5

started Colton, causing him to dance around and jump up and down.  The plaintiff's trainer did not tell her that Colton was one of the three worst-behaved horses he had seen, or that he should not be in the arena with others.  She did not agree with his opinion about Colton, never having seen the horse out of control when she handled him in the barn.  She did not recall the other trainer describing Colton as dangerous, but would have taken that opinion "with a grain of salt" if he expressed it.  Being described as "high strung" is not pejorative of itself, because it simply means a horse with high energy that is both attentive and sensitive.

Gerald Heitzler did not observe anything memorable about Colton.  He did not speak with either trainer about the horse.  He was not present at the time of the accident.

**4.0  The Ruling**

As the trial court noted, "it would appear that horses making noise by running into the fence in the arena *for whatever reason* is a fairly normal and common occurrence associated with horses being ridden in the arena."  (Italics added.)  It concluded the exact nature of Colton's demeanor was therefore not a material fact, because "the situation encountered by plaintiff during the incident in question was within the inherent risks of horseback riding regardless of Colton being unstable, high strung, and having attitude problems.  [']Horses being horses['] run in the arena and run into the arena fence causing a commotion; and horses being spooked by the conduct of other horses is something that is part of the sport and happens from time to time."

**DISCUSSION**

Plaintiff often adverts to the trial court applying the wrong legal standards in its ruling on the motion.  Given our de novo review of the ruling, any such error would be necessarily harmless, so our analysis will not reflect this framing of her argument.  (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694.)

Defendants' protests to the contrary, there are distinct criteria for liability based on the role a particular defendant plays when an incident occurs in recreational activity. (*Levinson v. Owens* (2009) 176 Cal.App.4th 1534, 1544; *Harrold v. Rolling J Ranch* (1993) 19 Cal.App.4th 578, 583.) For both coparticipants and instructors, there must be *reckless*[1] conduct entirely outside that which is expected either in the activity or in the learning process for the activity, which can be prohibited without changing the nature of the activity or chilling vigorous participation. (*Avila*, *supra*, 38 Cal.4th at pp. 162, 165 [vicarious liability for coparticipant]; *Kahn*, *supra*, 31 Cal.4th at pp. 996, 1002, 1004, 1009, 1011 [vicarious liability for instructor]; *Cann v. Stefanec* (2013) 217 Cal.App.4th 462, 470 [teammate]; *Eriksson*, *supra*, 191 Cal.App.4th at p. 845 [instructor]; *Shelly v. Stepp* (1998) 62 Cal.App.4th 1288, 1294-1295 (*Shelly*) [coparticipant and vicariously liable proprietor]; *Staten v. Superior Court* (1996) 45 Cal.App.4th 1628, 1633 (*Staten*) [coparticipant]; *Freeman v. Hale* (1994) 30 Cal.App.4th 1388, 1393-1394 [drunk coparticipant]; see *Avila*, *supra*, 38 Cal.4th at p. 165 [discussion in context of sponsor]; *Parsons v. Crown Disposal Co.* (1997) 15 Cal.4th 456, 482 [discussion in context of uninvolved third party, who does not have any duty]; *Cohen*, *supra*, 159 Cal.App.4th at p. 1491 [discussion in context of proprietor].) Proprietors, on the other hand, have a lesser threshold for liability; they have a duty not to *increase* inherent risks, which in the context of precautions is limited to those that do *not* change the nature of the recreational activity or chill vigorous participation in it; proprietors do not have any affirmative duty to *reduce* inherent risks. (*Nalwa*, *supra*, 55 Cal.4th at pp. 1156, 1162 [declining to impose any greater duty for proprietors]; *Kahn*, *supra*, 31 Cal.4th at pp. 1004, 1011;

---

[1] As used in this context, this is not the standard of conduct that is more egregious than ordinary negligence; it is simply the label for conduct that is completely unexpected in the recreational activity. (*Cohen v. Five Brooks Stable* (2008) 159 Cal.App.4th 1476, 1495-1496 (*Cohen*).)

*Cohen*, *supra*, 159 Cal.App.4th at p. 1492; *Giardino v. Brown* (2002) 98 Cal.App.4th 820, 831; *Harrold v. Rolling J Ranch*, *supra*, 19 Cal.App.4th at p. 586.)

Plaintiff does not assert (at least in the context of the present appeal) that the coparticipant defendant engaged in reckless conduct. (Cf. *Shelly*, *supra*, 62 Cal.App.4th at pp. 1294-1295 [coparticipant and vicariously liable proprietor did not have duty to take steps to better control unruly horse].) She instead seeks to foist liability on the proprietor defendants for somehow increasing the risks inherent in horseback riding in allowing the coparticipant defendant to ride the bad, bad Colton (his disposition being the sole triable issue that plaintiff can identify), but does not identify any precaution defendants could have taken other than prohibiting the coparticipant defendant from riding him or riding him in the "presence" of others.

However, one horse crashing into a fence and spooking the other are risks plaintiff admits are inherent in horseback riding. Plaintiff's focus on whether Colton is a bad, bad horse, which plaintiff's trainer thought the coparticipant defendant should not ride, is akin to suggesting that a ski resort increases the inherent risk of one skier crashing into another (*Staten*, *supra*, 45 Cal.App.4th at p. 1634) if it does not take steps to prevent an inexperienced skier from using an advanced run (or using it when others are present) on which the skier would lose control. Expanding the duty of a proprietor to take such steps would result in chilling the vigorous engagement of coparticipants in the activity through prohibiting them from pushing their skill levels, which is protected in the instructor cases from tort liability.

In effect, plaintiff is arguing that defendants should have *reduced* the inherent risk of fence-crashing and spooking through preventative action on the use of Colton, and the cases cited above are replete with the rejection of any such duty. Plaintiff's opposition

8

consequently failed to establish any triable issue of *material* fact that would defeat defendants' affirmative defense of primary assumption of the risk.[2]

**DISPOSITION**

The judgment is affirmed. Defendants are awarded their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)


      BUTZ      , J.


We concur:


      BLEASE      , Acting P. J.


      ROBIE      , J.

---

[2] In light of this holding, we do not need to reach defendants' alternative argument of express assumption of the risk through the 2007 written releases.