Filed 11/19/15  Orellana v. Pacific Racing Assoc. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MARCOS ORELLANA,<br><br>　　　　Plaintiff and Appellant,<br><br>v.<br><br>PACIFIC RACING ASSOCIATION et al.,<br><br>　　　　Defendants and Respondents. | A143696<br><br>(Alameda County<br>Super. Ct. No. RG12661445) |

Marcos Orellana was employed as a horse groom at the Golden Gate Fields racetrack in Berkeley.  Orellana was injured after a car startled a horse he was walking to a stable.  Orellana sued, among others, the owner of the racetrack (Pacific Racing Association; PRA) and a horse trainer, William Morey, for whom the driver rode horses.  The trial court granted summary judgment as to PRA and Morey, and Orellana appeals.  We affirm.

To oppose summary judgment, Orellana relied largely on matters that were deemed admitted by the driver after he failed to respond to Orellana's requests for admission.  We agree with the trial court that those deemed admissions could not be used as evidence against the other parties in the action.  Summary judgment was also proper because the risk that a racehorse will startle is an inherent risk of horseracing and there is no evidence that risk was tortiously increased.

1

# I.   BACKGROUND

A.   *Statement of Facts*

We summarize the evidence cited in the separate statements of undisputed facts and responses thereto. (See *Parkview Villas Assn., Inc. v. State Farm Fire & Casualty Co.* (2005) 133 Cal.App.4th 1197, 1213 [citing " 'golden rule' " of summary judgment: " '[i]f it is not set forth in the separate statement, *it does not exist*' "].)  We resolve conflicts in the evidence, and draw reasonable inferences from the evidence, in the light most favorable to Orellana, the party opposing summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.)

Orellana was employed as a horse groom by a series of horse trainers.  Orellana's duties included walking horses to, from, and around the stable area of Golden Gate Fields.  The stable area was regularly accessed by people, animals, and vehicles involved in the upkeep of the horses.  On race days, a PRA gate attendant allowed motor vehicles to enter the stable area only if the driver had a California Horse Racing Board license, a current business relationship with a party at the racetrack, and a current need to have a vehicle in the stable area.  These guidelines were intended to provide a safe environment for people and animals on the property.

Race horses startle easily, especially after a race because they are tired, thirsty, and have been administered government-approved drugs that make them more energetic.  Sometimes a piece of paper flying by in the wind is enough to startle a horse following a race.  Sometimes a noise or sudden movement that startles the horse cannot be anticipated.  During Orellana's career at Golden Gate Fields, startled horses repeatedly injured him.  For example, in 2000, a horse startled by a straw-loading machine butted into Orellana, causing an injury that required surgery; in 2002, a sleeping horse startled awake hit Orellana in the knee; in 2004, a horse startled by the sound of another horse kicking a stable wall hit Orellana with its chest; and in 2007, a horse startled by a passing bicyclist kicked Orellana, tearing apart his ankle.

On December 31, 2010, at about 2:15 p.m., following a race, Orellana was leading a racehorse to a stable along a service road at the edge of the stable area.  The horse was

2

very agitated.  As Orellana walked the horse around a corner and onto the service road, he saw a car about five meters away that was about to turn in his direction.  The car startled the horse, which reared and hit Orellana on the head and shoulder, injuring him.  Orellana was surprised by the car's presence because cars were hardly ever on the service road, which is narrow, and because he could not hear the car approach due to noise from the racetrack.

The car that startled the horse was driven by Adrian Perez.  Orellana knew that Perez rode horses for Morey.  Morey averred that Perez worked as an independent contractor on a per-ride basis to exercise horses for him, and for other trainers at Golden Gate Fields.  The exercise rides always took place before 10:00 a.m.  Morey did not authorize Perez to enter the stable area in the afternoon of December 31, 2010, and he never authorized Perez to use a vehicle that was owned or controlled by Morey.  Although Perez did not work for PRA, if he drove into the stable area at about the time of the incident, he would have been admitted by the PRA gate attendant.

B.    *Litigation*

Orellana sued PRA, Morey, Perez and others for negligence and premises liability.  Although Perez answered the complaint, he did not respond to Orellana's written discovery demands, which included requests for admissions.  Orellana successfully moved the court to deem the following facts admitted:

"1.    At the time of the INCIDENT, [Perez was] acting in the course and scope of [his] employment with defendant William Morey;

"2.    At the time of the INCIDENT, safety regulations applicable to Golden Gate Fields prohibited the operation of motor vehicles in the stable area;

"3.    The purpose of the safety regulation that prohibited the operation of motor vehicles in the stable area of Golden Gate Fields at certain times was to avoid injury to animals and the persons working with them[;]

"4.    At the time of the INCIDENT, [Perez was] operating a motor vehicle in the stable area of Golden Gate Fields in violation of safety regulations applicable to Golden Gate Fields;

3

"5.   At the time of the INCIDENT, employees of [PRA] had allowed [Perez] to enter the stable area of Golden Gate Fields in [his] motor vehicle in violation of safety regulations applicable to Golden Gate Fields;

"6.   At the time of the INCIDENT, [Perez's] operation of a motor vehicle in the stable area of Golden Gate Fields, in violation of safety regulations applicable to Golden Gate Fields, startled a horse with which . . . Orellana was working, resulting in injury to [Orellana]."

The court later entered Perez's default.

PRA and Morey separately moved for summary judgment. PRA argued that it had no special relationship with Perez and thus owed no duty of due care toward Orellana with respect to Perez's conduct; that it did not maintain its property in an unsafe condition; and that Orellana's claims were barred by the doctrine of primary assumption of risk. Morey argued he owed no duty of care toward Orellana because Perez was not acting within the scope of his employment or agency at the time of the accident, nor was he driving Morey's vehicle. Morey also raised assumption of risk. In opposing the motions, Orellana relied in part on the facts deemed admitted by Perez.

The trial court granted both motions. With respect to Morey, the trial court wrote, "The undisputed facts establish that Morey did not own or entrust th[e] vehicle [Perez was driving] to Perez, and that Perez was not working for Morey at the time of the accident. . . . Although [Orellana] purports to dispute some of those facts, the only 'evidence' he cites in support of that dispute is the Court's . . . Order [D]eeming Requests for Admissions . . . [A]dmitted. That Order is not binding on Morey. [Citations.] The [admissions] . . . do not constitute competent or admissible evidence that would raise a triable issue of fact as to any claim asserted against Morey." With respect to PRA, the court wrote, "[T]he undisputed facts establish that the risk of being struck by a startled horse is inherent in the nature of [Orellana's] job as a horse groom[]. . . . Therefore, [the] negligence claim against PRA is barred by primary assumption of risk doctrine. [Citation.] [¶] [Further], the undisputed facts establish that there was no dangerous condition of the property on which [Orellana] was injured giving rise to a claim for

4

premises liability, because the service road on which Perez was driving was an open and obvious condition of the property."

## II.    DISCUSSION

Summary judgment is appropriate "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)[1]  "[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. . . . There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th p. 850, fns. omitted.)  When the plaintiff bears the burden of proving facts by a preponderance of the evidence and the defendant moves for summary judgment, the defendant "must present evidence that would require a reasonable trier of fact *not* to find any underlying material fact more likely than not." (*Id.* at p. 851.)  In ruling on the motion, the court must draw all reasonable inferences from the evidence in the light most favorable to the opposing party. (*Id.* at p. 843.)  We review an order granting summary judgment de novo. (*Id.* at p. 860.)

A.    *Use of Matters Deemed Admitted Against Other Parties*

Orellana argues the trial court erred in refusing to consider the matters deemed admitted by Perez as evidence in opposition to the summary judgment motions.  The trial court was correct.

"Any party may . . . request that any other party to the action admit . . . the truth of specified matters of fact, opinion relating to fact, or application of law to fact." (§ 2033.010.)  "Any matter admitted in response to a request for admission is *conclusively established against the party making the admission in the pending action*, unless the court has permitted withdrawal or amendment of that admission under

---

[1] All statutory references are to the Code of Civil Procedure.

Section 2033.300." (§ 2033.410, subd. (a), italics added.)  If a party fails to timely respond to a request for admissions, the requesting party may seek an order deeming the matters admitted.  The court must make the order unless the other party serves a proper response to the request for admissions before the hearing on the motion.  (§ 2033.280, subds. (b), (c).)  Matters deemed admitted are also conclusively established in the action against the party who failed to respond to the request for admissions unless they are withdrawn or amended.  (*Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 979 [discussing former § 2033, subd. (n)].)

We generally review a trial court's evidentiary rulings for abuse of discretion.  However, when the ruling turns on a question of statutory interpretation, we review it de novo.  (*Zhou v. Unisource Worldwide* (2007) 157 Cal.App.4th 1471, 1476.)  Orellana essentially argues that the trial court misinterpreted the phrase "conclusively established against the party making the admission in the pending action" in section 2033.410, subdivision (a), and misapplied the statutory scheme.  Therefore we review the argument de novo.

Orellana concedes that Perez's deemed admissions are not "conclusively established" or *binding* on the other defendants in the case.  He nevertheless contends that the admissions are *admissible evidence* against the other defendants and may therefore be sufficient to raise a triable issue of fact in the face of contrary evidence produced by those defendants.  That is, he contends Perez's deemed admissions are sufficient to defeat PRA's and Morey's summary judgment motions.  We disagree.  Orellana fundamentally misunderstands the function and nature of the admissions.

" 'Most of the other discovery procedures are aimed primarily at assisting counsel to prepare for trial.  Requests for admissions, on the other hand, are primarily aimed at setting at rest a triable issue so that it will not have to be tried. . . . .'  (*Cembrook v. Superior Court* (1961) 56 Cal.2d 423, 429 . . . );  [citation].)  As has been explained in one treatise:  '. . . admission requests seek to *eliminate* the need for proof . . . .' "  (*St. Mary v. Superior Court* (2014) 223 Cal.App.4th 762, 774–775.)  The Supreme Court has referred to deemed admissions as "binding judicial admissions."  (*Wilcox v. Birtwhistle, supra,*

6

21 Cal.4th at p. 979; see *Brigante v. Huang* (1993) 20 Cal.App.4th 1569*,* 1578 [*"*[a] matter expressly admitted, or deemed admitted by operation of law, [is] classified *as a judicial admission, binding on the admitting party, rather than merely an evidentiary admission* that can be controverted by other evidence" (italics added)], overruled on other grounds by *Wilcox*, at p. 983, fn. 12.) Another division of this court has held that a binding judicial admission (in that case, an admission in a pleading) " 'is not treated procedurally as evidence; i.e., the pleading need not (and should not) be offered in evidence, but may be . . . relied on as part of the case. And it is fundamentally different from evidence: It is a *waiver of proof* of a fact by conceding its truth, and it has the effect of removing the matter from the issues. . . . .' [Citation.] [¶] . . . Because an admission in the pleading forbids the consideration of contrary evidence, any discussion of such evidence is irrelevant and immaterial." (*Valerio v. Andrew Youngquist Construction* (2002) 103 Cal.App.4th 1264, 1271.) Similarly, matters admitted in response to requests for admission are waivers of proof, not admissible evidence that can be used at trial against the admitting party or any other party.

In short, the matters deemed admitted here are nothing more than facts that *Perez* effectively agreed not to contest at trial. Perez waived or forfeited his right to put Orellana to proof on these matters—with respect to Orellana's claims against Perez. There was no evidence that Perez had any authority or ability to make admissions binding upon any of the other defendants, and he certainly could not waive or forfeit their right to require Orellana to present proof on all elements of his claims. This would be true even if Perez had affirmatively admitted the facts deemed admitted. There is even less basis to make other defendants responsible for Perez's defaults.

Orellana argues the summary judgment statute expressly allows deemed admissions to be considered, citing language requiring the motion and opposition to be supported by "affidavits, declarations, *admissions*, answers to interrogatories, depositions and matters of which judicial notice shall or may be taken." (§ 437c, subd. (b)(1), (2), italics added.) We do not question that deemed admissions may "support" a summary judgment motion or opposition filed *against the party that failed to respond* to the request

7

for admissions by establishing that there has been a waiver of proof as to certain aspects of the case. Moreover, evidentiary admissions by a party may certainly be used in a motion or opposition *against that party*. However, as discussed *ante*, we find no case authority for the proposition that deemed admissions may be used as evidence against parties other than the party who failed to respond to the request for admissions, and Orellana cites to none.

Because the matters deemed admitted by Perez did not constitute admissible evidence in opposition to Morey's summary judgment motion, Orellana failed to raise a triable issue of fact regarding Morey's liability for Perez's actions. Morey averred that Perez was not acting within the scope of any employment by or agency on behalf of Morey at the time of the accident, and Orellana has not cited any admissible evidence to dispute that fact.[2] Nor has Orellana produced evidence that would establish an alternative basis for Morey's liability.[3] Accordingly, the court properly granted summary judgment for Morey.

---

[2] PRA asserted in its statement of undisputed material facts that Morey "employed" Perez at the time of the incident, citing the declaration of PRA's Environmental Health and Safety Director Roy Roenbeck. Orellana, however, did not cite this declaration as evidence in its response to *Morey's* statement of undisputed material facts. In any event, Roenbeck's declaration does not demonstrate that Roenbeck had personal knowledge of whether Perez was in fact acting within the scope of employment by Morey at the time of the accident. (See § 437c, subd. (d) [declarations "shall show affirmatively that the affiant is competent to testify to the matters stated"].)

[3] Orellana cites the "bunkhouse rule" for the proposition that "[e]mployers may be found liable for injuries arising from an accident that occurs when the employee is on property owned by the employer." He argues, "For the benefit of the employers and business owners, many of the employees were permitted to stay and live at the premises (as did [Orellana]). Thus, the employers and business owners operating at the site have a duty to ensure that their hires [(i.e., Perez)] act responsibly—even at times after they have concluded their primary responsibilities." The " 'bunkhouse rule' " that Orellana relies on extends worker's compensation protection to employees who are injured on premises where they are expected to reside as part of their employment. (*Aubin v. Kaiser Steel Corp.* (1960) 185 Cal.App.2d 658, 661; *Union Oil Co. v. Industrial Acc. Com.* (1931) 211 Cal. 398, 403.) The rule has no application to Morey's or PRA's liability here.

8

With respect to PRA, Orellana failed to raise a triable issue about whether PRA was liable for admitting Perez to the stable area sometime prior to the accident. PRA produced evidence that on race days its gatekeeper followed a policy of admitting only those vehicles that had a horseracing-related reason to be in the stable area, that Perez worked for horse trainers at the track, and that it was common for vehicles to be in the stable area. In addition to Perez's deemed admissions, Orellana's opposition relied on Morey's declaration, which he argued showed that Perez "had no business purpose that required the use of a motor vehicle at the time that he entered the stable area." Morey simply averred that Perez was not working for *him* at the time of the accident or in the preceding late-morning and early-afternoon hours. However, Morey averred that Perez worked for several trainers and Morey did not purport to know whether Perez had a legitimate business reason to be in the stable area while working for other trainers, or for someone else at the time of the incident. In any event, even if Perez no longer had a legitimate purpose for being in the stable area at the time of the accident, Orellana produced no admissible evidence that Perez lacked a legitimate reason to be there at the time the PRA gatekeeper admitted him to the stable area.[4] But, even assuming PRA breached its guidelines in admitting Perez to the stable area at a time when he had no legitimate reason to be there, Orellana has not produced evidence that could defeat PRA's primary assumption of risk defense.

B.      *Doctrine of Primary Assumption of the Risk*

Orellana argues the trial court erred in holding that his claims were barred by primary assumption of risk. Again, we agree with the trial court.

"Primary assumption of the risk applies when the court, 'after examining the nature of the particular activity and the parties' relationship to that activity, concludes that a plaintiff engaged in the particular activity is harmed by the risks inherent in the

---

[4] In his opening brief, Orellana seems to suggest that Perez's mere continued presence in the stable area would provide a basis for liability, stating: "For whatever reason, and for whose ever benefit, Mr. Perez was 'permitted to stay' on the premises where he is was hired to perform work." He does not articulate why this would be so.

9

activity.' [Citation.] When the risks are inherent, the defendant does not have a 'duty to protect the plaintiff from those risks [citation] or to take steps to reduce those risks.' [Citations.] [¶] The doctrine of primary assumption of the risk, however, 'does not grant unbridled legal immunity to all defendants.' [Citation.] 'Although defendants generally have no legal duty to eliminate (or protect a plaintiff against) risks inherent in the [activity] itself, it is well established that defendants generally do have a duty to use due care not to increase the risks to a participant over and above those inherent in the [activity].' (*Knight*[ *v. Jewett* (1992)] 3 Cal.4th [296,] 315–316.) Likewise, . . . summary judgment on primary assumption of risk grounds is unavailable unless the defendant disproves the theory it increased the inherent risks, or establishes a lack of causation between its conduct and the plaintiff's injury." (*Fazio v. Fairbanks Ranch Country Club* (2015) 233 Cal.App.4th 1053, 1058–1059; see *Gregory v. Cott* (2014) 59 Cal.4th 996, 1001 [holding that doctrine governs claims arising from inherent occupational hazards]; *Saville v. Sierra College* (2005) 133 Cal.App.4th 857, 867–868 [applying doctrine to student injured while practicing takedown maneuvers in police officer training course].) The question of whether a defendant increased the risks inherent in an activity is a question of law if it is a matter of further defining the defendant's duty, but is a question of fact if it requires application of the governing standard of care to the facts of the particular case. (*Fazio,* at pp. 1062–1063.)

In *Domenghi v. Evans* (1998) 61 Cal.App.4th 118, the plaintiff participated in a cattle roundup that involved his own cattle as well as cattle owned by the defendants. He characterized the roundup as " 'a team effort.' " In roundups, calves must be restrained for branding, castrating, vaccination and dehorning. The safer method of restraint is to use a mechanical chute, but this roundup used horsemen and ropes to restrain the calves because it "made the roundup 'more of a fun event . . . ,' like a rodeo," even though it was "common to 'get hit and kicked and shoved around' " using this method. During the roundup, a calf owned by the defendants threw its head back while it was being restrained and injured the plaintiff's leg. (*Id.* at pp. 119–120, 122.) The court held, "Primary assumption of risk bars [the plaintiff's] claim . . . because the risk that one will be hit by a

calf's head is inherent in the nature of a cattle roundup" using horsemen and ropes, and the plaintiff had voluntarily agreed to participate in that type of roundup. (*Id.* at pp. 121–122.)

Here, Orellana knew well that sudden movements by startled racehorses was an inherent risk of walking and grooming racehorses and the activity of horseracing. Orellana himself testified that horses can be startled by sounds or by papers flying by in the wind, and Orellana had frequently been injured in such incidents. Any claim based on an injury resulting from such startling is barred by primary assumption of risk. (*Domenghi v. Evans, supra,* 61 Cal.App.4th at p. 122.) Orellana attempts to distinguish *Domenghi* by arguing that PRA is liable for *increasing* the inherent risk of the occupation. He cites *Fazio v. Fairbanks Ranch Country Club*, which involved a musician who was injured when he fell into a gap in the stage on which he was performing. He sued the owner of the premises that had set up the stage. (*Fazio, supra,* 233 Cal.App.4th at p. 1056.) The court held that, while "falling off stage is an inherent risk for all stage performers," the defendant could be found liable for increasing that inherent risk by the manner in which it constructed the stage. (*Id.* at pp. 1059, 1063.) The plaintiff had produced expert testimony that the stage construction fell below the standard of care in the industry. (*Id.* at pp. 1057, 1063.)

Orellana has not produced evidence that could defeat PRA's primary assumption of risk defense. PRA produced evidence that the risk of a horse startling is inherent in the occupation of grooming and walking racehorses. It also produced evidence that the risk of horses being startled by motor vehicles is inherent in that activity, because vehicles are necessarily present in and moving through the stable area at all times: for example, vehicles deliver hay, clean stables, and bring in veterinarians to treat horses. Orellana does not dispute that the presence of moving vehicles in the stable area is inherent in the activity of horseracing. Instead, he claims PRA increased this risk by allowing an *unauthorized* person to drive in the stable area at the time of the accident.

However, even assuming Perez lacked a legitimate business reason for his presence, the record does not support an inference that the presence of one additional

11

vehicle appreciably increased the inherent risks of the activity. Although Orellana testified that he did not expect to see a car on the service road, he produced no evidence that could support an inference that the presence of that additional car on that road foreseeably and appreciably increased the risk of injury to Orellana while he walked the horse down the road. There continued to be a danger that a passing bicyclist, unexpected noise, or wind-blown trash would startle the horse even absent *any* motor vehicles. Primary assumption of risk bars Orellana's causes of action for both negligence and for maintaining property in a dangerous condition. (See *Knight v. Jewett, supra,* 3 Cal.4th at pp. 315–316.)

## III. DISPOSITION

We affirm the judgments. Orellana shall bear Morey's and PRA's costs on appeal.

 

                                                _____

                                                BRUINIERS, J.

WE CONCUR:


_____

JONES, P. J.


_____

NEEDHAM, J.

A143696